# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

JAMES SMITH,

      **Plaintiff,**

                           **Civil Action 2:15-cv-1272**
    **v.**                            **Judge Michael H. Watson**
                                  **Magistrate Judge Elizabeth P. Deavers**

STATE OF OHIO REHABILITATION
AND CORRECTIONS, *et al.*,

      **Defendants.**

## <u>ORDER and REPORT AND RECOMMENDATION</u>

Plaintiff, James Smith, an Ohio inmate who is proceeding without the assistance of counsel, brings this civil rights action under 42 U.S.C. § 1983 against Defendant, Correctional Officer Herren, alleging that he was subjected to excessive force in violation of the Eighth Amendment. This matter is before the Court for consideration of Defendant's Motion for Summary Judgment, Plaintiff's Motion for Summary Judgment, Plaintiff's Motions to Compel, and the parties' briefing relating to these Motions. (ECF Nos. 20, 22, 23, 24, 29, 32, 33, 34, 39, 40, and 41.) For the reasons set forth below, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment be **GRANTED** and that Plaintiff's Motion for Summary Judgment be **DENIED**. In addition, Plaintiff's Motions to Compel are **DENIED.**

# I.

The alleged events giving rise to this action occurred while Plaintiff was incarcerated at the Madison Correctional Institution ("MCI") located in London, Ohio. According to Plaintiff's unverified Complaint, on May 27, 2013, Defendant Herron, without provocation, verbally harassed him, threw him to the ground, and choked him while placing a knee in his back. He further alleges that non-party Corrections Officer Avery "landed on his back" while he was on the ground. (Pl.'s Compl. 6, ECF NO. 2.)

On the day of the incident, Defendant filed a conduct report against Plaintiff that offers a very different account. (May 27, 2013 Conduct Report, ECF No. 29-3.) In this conduct report, Defendant states that as Plaintiff entered the chow hall, he asked him whether "he had anything on him or in his pockets." (*Id*.) When Plaintiff refused to respond, Defendant gave him a direct order to "get on the wall." (*Id*.) Plaintiff complied, but "became very upset that he was being searched" and "turned off the wall with clinched [sic] fist[s]." (*Id*.) Defendant responded by placing his hands and arms around Plaintiff, guiding him to the ground and ordering him to "cuff up." (*Id*.) Plaintiff resisted and ignored orders. Corrections Officers Avery and Weaver arrived and assisted Defendant in handcuffing Plaintiff. Defendant also filed an Incident Report on May 27, 2013, in which he offers the same account. (May 27, 2013 Herren Incident Report, ECF No. 29-2.)

Nonparty Corrections Officer Weaver also filed an Incident Report on May 27, 2013, stating that he heard Defendant give Plaintiff direct orders to quit resisting. (May 27, 2013 Weaver Incident Report, ECF No. 29-2.) He turned and saw Defendant trying to control Plaintiff and place him in handcuffs. Corrections Officer Weaver then assisted Defendant and also gave Plaintiff several direct orders to give him his hand. Plaintiff continued to resist. Corrections

Officer Avery then arrived and assisted Defendant and Corrections Officer Weaver to handcuff Plaintiff. After handcuffing Plaintiff, the officers helped him stand up and escorted him to the infirmary. (*Id*.)

Upon examining Plaintiff, the infirmary nurse, Nurse Curtiss, completed a Medical Exam Report. (May 27, 2013 Medical Exam Report, ECF No. 29-2.) Nurse Curtiss observed and documented a "small cut" on the left side of Plaintiff's head and redness on his wrists in the area where he was handcuffed, but no other injuries. (*Id*.) She concluded that Plaintiff's injuries required no treatment beyond cleaning with soap and water and application of bandaids.

On May 30, 2013, the Rules Infraction Board ("RIB") found that Plaintiff's conduct during the May 27, 2013 incident violated Rule 20 of the Inmate Rules of Conduct, which prohibits "[p]hysical resistance to a direct order," Ohio Administrative Code 5120-9-06(C)(20). (May 30, 2013 Disposition of RIB, ECF No. 29-3; Brunsman Aff ¶ 5, ECF No. 29-3.) The RIB found that Plaintiff had "turned to [Officer Herren] with a closed fist during a pat down search." (*Id*.) The RIB imposed a punishment of fifteen days in disciplinary control. (*Id*.)

On June 23, 2013, the Use of Force Committee issued its Report in which it concluded that the force employed by Corrections Officers Herron, Avery, and Weaver was justified and not excessive. (June 23, 2013 Use of Force Comm. Report, ECF No. 29-2.) In its Report, the Committee noted that the corrections officers' statements were consistent with each other and that Plaintiff's contention that he was choked was not supported by the findings in the Medical Exam Report, which did not note any redness around his neck. (*Id*.)

Three days after this incident, on May 30, 2013, Plaintiff filed an Informal Complaint Resolution ("ICR"). (ECF No. 2 at 9; Lee Aff. ¶ 10, ECF No. 29-1.) In this May 30, 2013 ICR, Plaintiff alleged that Defendant Herren threw him to the ground and choked him. On June 17,

2013, an MCI staff member responded to Plaintiff's ICR. (Lee Aff. ¶ 10, ECF No. 29-1.) Twenty-three days later, on July 10, 2013, Plaintiff filed a formal Notification of Grievance ("NOG") referencing the May 27, 2013 NOG. (*Id.*; ECF No. 2 at 12.) On July 24, 2013, the MCI Institutional Inspector issued a Disposition of Grievance, concluding that Plaintiff's July 10, 2013 NOG "was not timely filed" and further finding "no violation of rule, policy, or law." (*Id*; July 24, 2013 Grievance Disposition, ECF No. 29-1 at 5.) On July 26, 2013, Plaintiff filed an appeal to the Chief Inspector. (*Id*.) On September 5, 2013, the Chief Inspector issued his decision in which he affirmed the finding of the Institutional Inspector. In this decision, the Chief Inspector explicitly found that Plaintiff's grievance "was not filed timely in accordance with AR 5120-9-31." (Sept. 5 Decision of Chief Inspector, ECF No. 29-1 at 6-7.)

Plaintiff filed the instant action on April 15, 2015, bringing a civil rights action under 42 U.S.C. § 1983 against the State of Ohio Rehabilitation and Corrections ("ODRC"), MCI, and Corrections Officer Herren. Following an initial screen of Plaintiff's Complaint under 28 U.S.C. § 1915(e)(2), only Plaintiff's excessive force claims against Corrections Officer Herren remains. (Apr. 17, 2017 Report and Rec, ECF No. 3; May 7, 2015 Order, ECF No. 5.) In his unverified Complaint (ECF No. 1), Plaintiff alleges that as a result of the May 27, 2013 incident, he has back problems that prevent him from playing basketball. Plaintiff seeks $350,000 in damages.

On December 13, 2016, Defendant filed a Motion for Summary Judgment (ECF No. 29), asserting that he is entitled to summary judgment on the merits because he applied force in pursuit of the valid penological goal of maintaining order and preventing an attack. Defendant maintains that in light of Plaintiff's actions, the force he utilized "was well-within the bounds of the Eighth Amendment." (*Id*. at 5.) Defendant also maintains that he is entitled to qualified immunity. Defendant alternatively submits that he is entitled to summary judgment because Plaintiff failed to properly exhaust his administrative remedies. Defendant explains that Plaintiff

failed to timely grieve his claim beyond the first step of the three-step grievance procedure set forth in Ohio Administrative Code 5120-9-31(K).

In his December 22, 2016 unsworn and unverified Memorandum in Opposition to Defendant's Motion for Summary Judgment (ECF No. 33), Plaintiff states that he has witnesses who could support his assertion that he was not aggressive towards Defendant. Plaintiff also asserts that he is waiting on x-rays of his back, as well as Defendant's production of other complaints of excessive force that other inmates have filed against Defendant. Plaintiff further maintains that he timely exhausted his administrative remedies with regard to his claims against Defendant and references the exhibits to his Complaint and his Memorandum in Opposition in support. Plaintiff attached two Kites to his Memorandum in Opposition. The first he dated June 17, 2013, and addressed it to the Institutional Inspector. The Kite reads as follows: "MRS. PARRISH, you told me to write you a Kite if I did not receive a[n] answer back from my informal complaint that was sent on May 30, 2013." (ECF No. 33 at 4.) The Kite was marked as "RECEIVED" on June 19, 2013, and contains a notation that states "ICR responses enclosed." (*Id.*) The second Kite Plaintiff attached to his Memorandum in Opposition is dated November 18, 2016, and directed to MCI "Human Resource / Ms. Kimberly Bliss." (ECF No. 33 at 5.) In this Kite, Plaintiff requests copies of Defendant's service records and all complaints and disciplinary reports from 2011 to 2015 that relate to Defendant. The Kite contains a response notation that directs Plaintiff to pay $5.60 to obtain the copies of the documents he requests. The Kite attached to Plaintiff's Complaint that he references in his Memorandum in Opposition is undated and directed to Mrs. Parrish. (ECF No. 2 at 16.) In this Kite, Plaintiff states that he sent three informal complaints on May 30, 2013, but that she only responded to two of them. He asks for the third one and requests three grievance forms. This Kite is marked as received on June 24,

2013, and contains the following response, also dated June 24, 2013: "The inspector doesn't answer informals as it negates ability to address the grievance. See AR 5/20-9-31 and instructions on form. I receive the pink copy to establish the record and timeline." (*Id.*)

In his February 8, 2017 Reply in Support of his Motion for Summary Judgment (ECF No. 40), Defendant maintains that Plaintiff has failed to proffer any evidence establishing that Defendant's use of force was not justified. Defendant further posits that the unauthenticated documents Plaintiff referenced and attached as exhibits to his Memorandum in Opposition do not create a dispute of fact with regard to whether he properly exhausted his administrative remedies. Defendant attached the Declaration of MCI Institutional Inspector Jondrea Parrish in which she states that Plaintiff sent a Kite to her office on June 14, 2013, in which he states that he had only received responses to two of his three May 30, 2013 ICRs and requests three grievance forms. (Parrish Decl. ¶¶ 4-5, ECF No. 40-1.) She further indicates that she responded on June 24, 2013, informing Plaintiff that Institutional Inspectors do not respond to ICRs. She also attached the grievance forms he requested. (*Id*. at ¶ 6.) Ms. Parrish states that on June 17, 2013, Plaintiff received a response to his ICR regarding his incident with Defendant. She indicates that pursuant to the applicable grievance procedure, he had fourteen days to file his Notification of Grievance, which means it was due July 1, 2013. Ms. Parrish represents that although he dated his Notification of Grievance as July 10, 2013, he did not file it until July 16, 2013. She states that under either date, his Notification of Grievance was untimely given its July 1, 2013 due date. (*Id*. at ¶ 7.) Ms. Parrish attached Plaintiff's Kite Log to her affidavit, which is a spreadsheet that corroborates her affidavit testimony. (*Id*. at 3.)

On December 28, 2016, Plaintiff filed a Motion for Summary Judgment (ECF No. 34). In this Motion, Plaintiff asserts that he is entitled to summary judgment because Defendant

Herren is a violent and aggressive person. Plaintiff attaches two Notices of Disciplinary Action to his Motion. The first is dated June 2011 and suspends Defendant for two days for using profanity and being discourteous to another officer. (ECF No. 34 at 5; ECF No. 39 at 2.) The second is dated August 26, 2013, and terminates Defendant for making inappropriate comments to his supervisor, Lieutenant Smith, during a phone call and subsequently pushing Lieutenant Smith when later confronted about the conversation. (ECF No. 34 at 4; ECF No. 39 at 1.)

In his Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 40), Defendant asserts that the disciplinary reports do not implicate Plaintiff and are not relevant to this action.

In his Reply in Support of his Motion for Summary Judgment (ECF No. 41), Plaintiff again maintains that Defendant's removal from employment due to his altercation with Lieutenant Smith entitles him to summary judgment in this case. (*Id*. at 3.) He also attaches several Kites as exhibits that he posits demonstrate that he sufficiently exhausted his administrative remedies. In the first Kite he attaches, dated June 13, 2013, Plaintiff asks what happened to the incident report Corrections Officer Avery completed regarding the May 27, 2013 incident. (*Id*. at 5.) The individual responding indicated that the Use of Force Committee was investigating the incident. The second attached Kite, dated received on June 14, 2013, requests three grievance forms. (*Id*. at 7.) The third attached Kite appears blank. (*Id*. at 9.) The fourth attached Kite is dated June 17, 2013, and marked received on June 19, 2013. (*Id*. at 11-12.) In this Kite, Plaintiff complains that he has not yet received a response to his May 30, 2013 ICR. The notation in response states, "ICR responses enclosed." (*Id*. at 11.)

## II.

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495–96 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

# III.

The Undersigned first considers whether Defendant is entitled to Summary Judgment on the merits of Plaintiff's excessive form before considering his alternative assertion that he is entitled to summary judgment because Plaintiff failed to properly exhaust his administrative remedies and Plaintiff's Motions to Compel.

## A.      Merits of Excessive Force Claim

The Undersigned finds that Defendant is entitled to summary judgment on Plaintiff's excessive force claim.

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.'" *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  "Whether [a defendant's] alleged conduct constitute[s] excessive force in violation of the Eighth Amendment depends on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)); *see also Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) ("Corrections officers do not violate a prisoner's Eighth Amendment rights when they apply force in a good-faith effort to maintain or restore discipline." (internal quotation marks and citation omitted)).  Relevant factors in this analysis include "the extent of injury suffered by an inmate, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Combs v. Wilkinson*, 315 F.3d 548, 556-57 (6th Cir. 2002) (internal quotation marks and citation omitted).

A claimant need not establish a "significant injury" to prove an excessive-force violation.

*Wilkins v. Gaddy*, 559 U.S. 34, 37-40 (2010). The Supreme Court, however, has cautioned that

the extent of the injury is still meaningful in the analysis:

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. [*Hudson*, 503 U.S. at 7] "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Id.* (quoting *Whitley*, 475 U.S. at 321). The extent of injury may also provide some indication of the amount of force applied. As we stated in *Hudson*, not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* (some internal quotation marks omitted). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

*Id.* at 37-38.

In the instant case, Defendant has offered evidence, including Defendant's Conduct

Report, Defendant's Incident Report, nonparty Officer Weaver's Incident Report, the RIB

Disposition, and the Use of Force Committee Report, that reflects that Defendant employed force

in response to Plaintiff turning off of a wall with clenched fists during a pat down search and

subsequently refusing direct orders to allow himself to be handcuffed. (*See* May 27, 2013

Conduct Report, ECF No. 29-3; May 27, 2013 Herren Incident Report, ECF No. 29-2; Weaver

Incident Report, ECF No. 29-2; May 30, 2013 Disposition of RIB, ECF No. 29-3; and June 23,

2013 Use of Force Comm. Report, ECF No. 29-2.); *see also Stiggers v. Stroud*, No. 2:05-cv-911,

2006 WL 1071863, at *6 (S.D. Ohio Apr. 20, 2006) (relying on the Use of Force Committee's

report to conclude that the force utilized by the defendant corrections officer was necessary and

justified where the Plaintiff had failed to offer evidence to contradict the report).

In *Griffin v. Hardrick*, 604 F.3d 949 (6th Cir. 2010), the Sixth Circuit explained the deference owed to a prison official's decision to employ force upon encountering a prison disturbance as follows:

> [O]fficials confronted with a prison disturbance must balance the threat [that] unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, we must grant them wide-ranging deference in the adoption and execution of policies that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

604 F.3d at 954 (quoting *Combs*, 315 F.3d at 557 (citations and internal quotation marks omitted)).

Here, the undisputed evidence reflects that Defendant and Corrections Officers Avery and Weaver reasonably perceived a serious threat that necessitated utilization of force when Plaintiff turned off the wall with clenched fists and refused direct orders to cuff up. And contrary to the unverified allegations in Plaintiff's Complaint, the record evidence does not support a finding that Defendant choked Plaintiff. Rather, it reflects that Defendant placed his arms around Plaintiff and guided him to the ground while ordering him to "cuff up." (May 27, 2013 Conduct Report, ECF No. 29-3.) Like the Use of Force Committee, the Undersigned also finds that the absence of any mention of redness around Plaintiff's neck in Nurse Curtiss' Medical Exam Report belies his allegation that Defendant choked him. (*See* May 27, 2013 Medical Exam Report, ECF No. 29-2 (documenting only a small cut on Plaintiff's head and redness on his wrists where he was handcuffed); June 23, 2013 Use of Force Comm. Report, ECF No. 29-2 at 2 (finding Plaintiff's allegations that he was choked as inconsistent with the Medical Exam Report).) The record further supports Defendant's assertion that nonparty Corrections Officers Weaver and Avery assisted Defendant in handcuffing Plaintiff because he

was ignoring Defendant's orders and resisting attempts to handcuff him. (*See* May 30, 2013 Disposition of RIB, ECF No. 29-3.)

The Undersigned now considers "the extent of the injuries Plaintiff suffered," which "provide[s] some indication of the amount of force applied," and also bears on whether the officers employing the force "could have plausibly . . . thought [it] necessary." *Wilkins*, 559 U.S. at 37-38 (citations and internal quotation marks omitted)). As discussed above, the Medical Exam Report reflects only a small cut on Plaintiff's head and swelling in his wrists where he was handcuffed. In his Memorandum in Opposition, Plaintiff asserts that x-rays of his back would reveal issues with his spine. (Pl.'s Mem. in Opp. 2, ECF No. 33.) Even if the Court accepts as true that Plaintiff suffers from back issues that an x-ray would corroborate, the record does not support a finding that these back issues are attributable to Defendant's conduct. Moreover, the Medical Exam Report fails to document any complaints or observation of the alleged back injury. (*See* May 27, 2013 Medical Exam Report, ECF No. 29-2.)

In sum, the Undersigned concludes that Plaintiff has failed to satisfy his burden of demonstrating that genuine issues of fact exist for trial and that a reasonable jury could return a verdict in his favor with regards to his claim of excessive force. Significantly, Plaintiff has failed to support the allegations in his unverified Complaint with any evidence contradicting Defendant's position that the force he used was justified. Considering the gravity of the threat that Defendant and responding Corrections Officers Avery and Weaver reasonably perceived together with the minor injuries Plaintiff sustained, the Undersigned finds that the force utilized, including bringing Plaintiff to the ground and handcuffing him, was justified and reasonably "applied in a good-faith effort to maintain or restore discipline," not "maliciously or sadistically

to cause harm." *Whitley*, 475 U.S. at 319. It is therefore **RECOMMENDED** Defendant's Motion for Summary Judgment on Plaintiff's § 1983 excessive force claim be **GRANTED**.

It is further recommended that Plaintiff's Motion for Summary Judgment be **DENIED**. (ECF No. 34.) As set forth above, in this Motion, Plaintiff asks the Court to rely upon disciplinary notices issued in connection with unrelated incidents to conclude that Defendant employed excessive force during the May 27, 2013 incident. As Defendant points out in his Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Plaintiff cannot use evidence that Defendant may have behaved aggressively on a separate occasion with a different individual to prove that he utilized excessive force against him during the May 27, 2013 incident. *See* Fed. R. Evid. 404(b)(1) ("Evidence of crime, wrong, or other act is not admissible to prove that a person's character in order to show that on a particular occasion the person acted in accordance with the character."); *see also Flagg v. City of Detroit*, 715 F.3d 165, 175 (6th Cir. 2013) ("Rule 404(b) bars the admission of propensity evidence . . . "to show that on a particular occasion the person acted in accordance with character." (internal quotation marks and citation omitted)).

**B.    Exhaustion of Administrative Remedies**

The Undersigned further concludes that Defendant is entitled to summary judgment on the grounds that Plaintiff failed to properly satisfy the exhaustion requirements set forth in the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(a).

Section 1997(e)(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The United States Supreme Court recently re-emphasized

that exhaustion is mandatory under the statute and that courts cannot create exceptions to the provision. *Ross v. Blake*, 136 S.Ct. 1850 (2016); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." (citation omitted)). This mandatory exhaustion requirement applies to all lawsuits relating to prison conditions, regardless of the nature of the wrong or the relief sought. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

"A prisoner's failure to exhaust his intra-prison administrative remedies prior to filing suit 'is an affirmative defense under the PLRA . . . .'" *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting *Jones*, 549 U.S. at 216). Defendants bear the burden of proof on the affirmative defense of exhaustion. *Napier v. Laurel County, Ky.*, 636 F.3d 218, 225 (6th Cir. 2011) (citations omitted) ("[F]ailure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants."). "Summary judgment is appropriate only if defendants establish the absence of a genuine dispute as to any material fact regarding non-exhaustion." *Surles*, 678 F.3d at 455. "When a prisoner's complaint contains a combination of exhausted and unexhausted claims, courts are to dismiss the unexhausted claims but retain and address the exhausted claims." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 500 (6th Cir. 2011) (citing *Jones*, 549 U.S. at 220–24).

"Exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). To properly exhaust, prisoners must "tak[e] advantage of each step the prison holds out for resolving the claim internally and . . . follow the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th

Cir. 2010); *Jones*, 549 U.S. at 217–18 (noting that proper exhaustion requires "[c]ompliance with prison grievance procedures").

Ohio has established a procedure for resolving inmate complaints. Ohio Admin. Code § 5120–9–31. To properly exhaust a claim seeking relief "regarding any aspect of institutional life that directly and personally affects the [inmate]," an inmate at an ODRC facility must comply with the following three-step grievance system:

(1) The filing of an informal complaint - step one:

Within fourteen calendar days of the date of the event giving rise to the complaint, the inmate shall file an informal complaint to the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint. Staff shall respond in writing within seven calendar days of receipt of the informal complaint. If the inmate has not received a written response from the staff member within a reasonable time, the inmate should immediately contact the inspector of institutional services either in writing or during regular open office hours. The inspector of institutional services shall take prompt action to ensure that a written response is provided to the informal complaint within four calendar days. If a response is not provided by the end of the fourth day, the informal complaint step is automatically waived. Informal complaint responses should reflect an understanding of the inmate's complaint, be responsive to the issue, cite any relevant departmental or institutional rules or policies and specify the action taken, if any. The inspector of institutional services shall monitor staff compliance with the informal complaint process. Any pattern of non-compliance by staff shall be reported to the warden for appropriate action. The filing of an informal complaint may be waived if it is determined by the inspector of institutional services that there is a substantial risk of physical injury to the grievant, the complaint is filed pursuant to rule 5120-9-03 or 5120-9-04 of the Administrative Code, paragraph (H) of this rule, or for other good cause.

(2) The filing of the notification of grievance - step two:

If the inmate is dissatisfied with the informal complaint response, or the informal complaint process has been waived, the inmate may obtain a notification of grievance form from the inspector of institutional services. All inmate grievances must be filed by the inmate no later than fourteen calendar days from the date of the informal complaint response or waiver of the informal complaint step. The inspector of institutional services may also waive the timeframe for the filing of the notification of grievance, for good cause. The inspector of institutional services shall provide a written response to the grievance within fourteen calendar days of receipt. The written response shall summarize the

inmate's complaint, describe what steps were taken to investigate the complaint and the inspector of institutional service's findings and decision. The inspector of institutional services may extend the time in which to respond, for good cause, with notice to the inmate. The chief inspector or designee shall be notified of all extensions. Any extension exceeding twenty-eight calendar days from the date the response was due must be approved by the chief inspector or designee. Expedited responses shall be made to those grievances that, as determined by the inspector of institutional services, present a substantial risk of physical injury to the grievant or for other good cause.

(3) The filing of an appeal of the disposition of grievance - step three:

If the inmate is dissatisfied with the disposition of grievance, the inmate may request an appeal form from the inspector of institutional services. The appeal must then be filed to the office of the chief inspector within fourteen calendar days of the date of the disposition of grievance. For good cause the chief inspector or designee(s) may waive such time limits. The chief inspector or designee(s) shall provide a written response within thirty calendar days of receipt of the appeal. The chief inspector or designee(s) may extend the time in which to respond for good cause, with notice to the inmate. The decision of the chief inspector or designee is final. Grievance appeals concerning medical diagnosis or a specific course of treatment shall be investigated and responded to by a health care professional
.

Ohio Admin. Code § 5120–9–31(K).

As applied here, the Undersigned concludes that Defendant has satisfied his burden of proving that Plaintiff failed to exhaust his administrative remedies. As set forth above, Plaintiff was required to "properly exhaust" his claims, which required him to follow the "critical procedural rules" of ODRC's grievance process. *See Reed-Bey*, 603 F.3d at 324. As applicable to this case, "[p]roper exhaustion demands compliance with an agency's deadlines . . . because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91; *see also Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009) ("*Woodford* makes clear that a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance." (citation omitted)). This is true even though the appeal was alternatively considered

on the merits. *Vandiver v. Corr. Med. Servs., Inc*., 326 F. App'x 885, 889 (6th Cir. 2009) ("Where the grievance is denied alternatively on the merits and for failure to comply with critical grievance procedures, a later action will be subject to dismissal for failure to properly exhaust under Woodford." (citation omitted)); *Marshal v. Ohio Dep't of Rehab. & Corrs.*, No. 2:14-cv-338, 2017 WL 2210866, at *3 (S.D. Ohio May 19, 2017) (concluding that Ohio inmate had failed to properly exhaust administrative remedies where his appeal to the Chief Inspector was untimely and the Chief Inspector had concluded that the appeal was untimely and alternatively considered the merits of the appeal).

Specifically, Defendant has produced uncontroverted evidence that Plaintiff submitted an ICR on May 30, 2017, in which he alleged that Defendant used force on May 27, 2017, by choking him and throwing him to the ground. (Lee Aff. ¶ 10, ECF No. 29-1; ECF No. 2 at 12.) Defendant also produced evidence demonstrating that an MCI staff member responded to this ICR on June 17, 2013. (Lee Aff. ¶ 10, ECF No. 29-1; Parrish Decl. ¶7, ECF No. 40-1.) Pursuant to step two of Ohio's grievance procedure, Plaintiff had fourteen days from the June 17, 2013 ICR response to file his notification of grievance. Ohio Admin. Code § 5120–9–31(K)(2). Thus, Plaintiff's notification of grievance was due on or before July 1, 2013. In addition, on June 19, 2013, in response to a June 17, 2013 Kite Plaintiff filed with the Institutional Inspector, Plaintiff again received additional copies of the ICR responses. (ECF No. 33 at 4.) Thus, even if the Court were to assume that Plaintiff did not receive the ICR response until June 19, 2013, his notification of grievance was due on or before July 3, 2016. The evidence reflects, however, that Plaintiff did not file the requisite notice of grievance until July 16, 2013, notwithstanding the fact that he dated the notification of grievance as July 10, 2013. (Parrish Aff. ¶ 7, ECF No. 40-1.) In sum, even if the Court assumes that Plaintiff did not receive the ICR Response until June 19,

2013, and that he filed the Notification of Grievance on July 10, 2013, it would still untimely under Ohio's grievance procedure.

Defendant also produced uncontroverted evidence reflecting that on July 24, 2013, MCI Institutional Inspector Parrish denied Plaintiff's notification of grievance as untimely and alternatively concluded that it lacked merit. (Parrish Aff. ¶ 8, ECF No. 40-1; Lee Aff ¶ 10, ECF No. 29-1; ECF No. 2 at 2.) On appeal, the Chief Inspector agreed that Plaintiff's grievance "was not filed timely in accordance to AR-5120-9-31" and likewise found it to be unsubstantiated. (Lee Aff ¶ 10, ECF No. 29-1; Sept. 5 Decision of Chief Inspector, ECF No. 29-1 at 6-7.) Because Plaintiff's grievance was rejected as untimely, he failed to properly exhaust his administrative remedies. *See, e.g.*, *Scott*, 577 F.3d at 647; *Vandiver*, 326 F. App'x at 889; *Marshal*, 2017 WL 2210866, at *3.

Accordingly, should the Court be inclined to find an another basis for disposition of the matter, the Undersigned alternatively **RECOMMENDS DISMISSAL** of Plaintiff's excessive force claim against Defendant **WITHOUT PREJUDICE** for failure to properly exhaust his administrative remedies. *See Boyd v. Corrs. Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2006) ("A dismissal under § 1997e should be without prejudice." (citing *Knuckles El v. Toombs*, 215 F.3d 640 (6th Cir. 2000)).

C.      **Plaintiff's Motions to Compel**

In July 2016, Plaintiff served his second set of interrogatories. (ECF No. 18-1.) In August 2016, Plaintiff filed a motion seeking an order compelling Defendant to respond to these interrogatories. (ECF No. 18.) The Court denied this motion without prejudice because Plaintiff failed to include a certification that he had, in good faith, conferred or attempted to confer with Defendant regarding his failure to respond to the interrogatories as required under Federal Rule

of Civil Procedure 37.  (ECF No. 19.)  On September 21, 2016, Plaintiff filed a two-page renewed motion to compel, stating that he had sent his interrogatories and "tryed [sic] everything with Defendants, but still no reply to [his] Interrogatories."  (Pl.'s Mot. to Compel 2, ECF No. 20.)  In his Memorandum in Opposition, Defendant represents that he informed Plaintiff that his responses to the at-issue interrogatories would be delayed.  (ECF No. 22.)  Defendant asserts that Plaintiff failed to comply with Rule 37's requirement that he confer in good faith prior to filing the motion.  Defendant represents that subsequent to Plaintiff's Motion, he mailed a copy of his answer to the interrogatories, which he maintains renders Plaintiff's Motion to Compel moot.  (*Id*. at 2.)  Based on the record of the case, the Court therefore agrees that Defendant's service of his responses to Plaintiff's second set of interrogatories renders Plaintiff's September 2016 Motion to Compel moot.  Accordingly, Plaintiff's September 2016 Motion to Compel is **DENIED AS MOOT**.  (ECF No. 20.)

On October 18, 2016, Plaintiff filed yet another two-page Motion to Compel, once again seeking a Court order compelling Defendant to answer his second set of interrogatories.  (ECF No. 23.)  In this Motion, Plaintiff acknowledges that Defendant responded to his second set of interrogatories and answered some of the questions.  Plaintiff, however, seeks an order compelling Defendant to respond to the remaining twenty-two questions to which he objects.  In support of this Motion, Plaintiff states that the interrogatories request information relating to Defendant's interactions with other individuals, which he maintains is relevant and "probative to [his] Civil Action" because "it would show Defendant's behavioral problem and his Character . . . ."  (*Id*. at 1-2.)  Plaintiff includes a section entitled "CERTIFICATION" in which he states that he sent his second set of interrogatories, but that Defendant failed to answer all of the questions.  (*Id*. at 2.)

In his Memorandum in Opposition to Plaintiff's October 2016 Motion to Compel, Defendant asserts that the Court should deny Plaintiff's Motion to Compel because he failed to confer in good faith regarding the parties' dispute over the interrogatories and to comply with Rule 37's certification requirement. (ECF No. 24.) Defendant alternatively submits that the Court should deny Plaintiff's Motion to Compel because the information he seeks regarding Defendant's character is not relevant to Plaintiff's excessive force claim in this action.

The Court agrees that denial of Plaintiff's October 18, 2016 Motion to Compel (ECF No. 23) is warranted because he failed to include a certification that he has attempted to confer in good faith with Defendant regarding the disputed interrogatories. As this Court advised in its September 13, 2016 Order denying Plaintiff's earlier-filed Motion to Compel without prejudice:

> Federal Rule of Civil Procedure 37 permits a party to file a motion for an order compelling discovery if another party fails to respond to discovery requests, provided that the motion to compel includes a certification that the movant has, in good faith, conferred or attempted to confer with the party failing to respond to the requests. Fed. R. Civ. P. 37(a)(1).
>
> This requirement is not waived simply because the moving party is an inmate proceeding without counsel. *See, e.g., Hughes v. Lavender*, No. 2:10-cv-674, 2011 WL 1233481, at *3 (S.D. Ohio Mar. 29, 2011) (denying *pro se* inmate's motion to compel without prejudice to renewal after Rule 37(a)-mandated conference had occurred and inmate made requisite certification); *Sneed v. Moore*, No. 1:09-cv-043, 2009 WL 3599476, at *1 (S.D. Ohio Oct. 26, 2009) (denying pro se inmate's motion to compel, in part, because he failed to conclude a certification of good faith pursuant to Rule 37(a)); *Lewis v. Randle*, No. C2-01-161, 2002 WL 483542, at *2 (S.D. Ohio Mar. 13, 2002) (same); see also *Rones v. Schrubbe*, 451 F. App'x 585, 587 (7th Cir. 2011) (affirming trial court's denial of pro se inmate's motion to compel on the grounds that he failed to comply with Rule 37(a)'s requirement that he certify that he had conferred with the opposing party).

(Sep. 13, 2016 Order 1-2, ECF No. 19.)

Notwithstanding this deficiency, review of October 18, 2016 Motion to Compel reveals that the information Plaintiff seeks to obtain through his pending Motions to Compel would not

alter the Undersigned's foregoing recommendations.  More specifically, as best as the

Undersigned can discern, Plaintiff seeks to compel responses to questions "related to

Defendant's interactions with other individuals" and his "character."  (Pl.'s Mot to Compel 1,

ECF No. 23.)  As discussed above, however, such evidence cannot be utilized to prove that

Defendant used excessive force against Plaintiff during the May 27, 2013 incident.  *See* Fed. R.

Evid. 404(b)(1); *Flagg*, 715 F.3d at 175.  Thus, Plaintiff's October 18, 2016 Motion to Compel is

**DENIED.**

In sum, Plaintiff's Motions to Compel are **DENIED.**  The Clerk is **DIRECTED** to

remove the Motions (ECF Nos. 20 and 23) from the Court's pending Motions list.

### IV.

For the reasons set forth above, it is **RECOMMENDED** that Defendant's Motion for

Summary Judgment be **GRANTED** (ECF No. 29) and that Plaintiff's Motion for Summary

Judgment (ECF No. 34) be **DENIED.**  In addition, Plaintiff's Motions to Compel are **DENIED**.

(ECF Nos. 20 and 23.)

### PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that

party may, within fourteen (14) days, file and serve on all parties objections to the Report and

Recommendation, specifically designating this Report and Recommendation, and the part in

question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy.

Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and

Recommendation will result in a waiver of the right to *de novo* review by the District Judge and

waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**

Date:  June 29, 2017                                    */s/ Elizabeth A. Preston Deavers*
                                                       **ELIZABETH A. PRESTON DEAVERS**
                                                       **UNITED STATES MAGISTRATE JUDGE**